***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby REVERSES the Opinion and Award of Deputy Commissioner Stephenson.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction over the parties and the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The date of plaintiff's injury was March 20, 2003.
4. At the time of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer/employee relationship between the parties, with defendant-employer being insured by American Protection Insurance.
5. Plaintiff's average weekly wage is $649.32, which yields a corresponding compensation rate of $432.90.
6. Plaintiff last worked for defendant-employer on June 3, 2003.
7. The following exhibits were entered by the parties into the evidence of record at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit 1-Pretrial Agreement
b. Stipulated Exhibit 2-plaintiff's personnel records
c. Stipulated Exhibit 3-medical records
d. Stipulated Exhibit 4-Industrial Commission forms
8. The depositions and records of Dr. Andrew Bush and Dr. Robin Koeleveld are a part of the evidence of record.
9. The issue before the Commission is whether plaintiff sustained an injury by accident in the course and scope of his employment, and, if so, to what benefits is he entitled under the North Carolina Workers' Compensation Act.
 ***********
Based upon the stipulations and the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-seven years old. Plaintiff completed the eleventh grade. Plaintiff's prior work history consisted of jobs that involved heaving lifting. He had no prior back or neck problems that prevented him from performing heavy lifting in his prior employment.
2. Plaintiff worked as a tire delivery driver for defendants for approximately three years. Plaintiff's job duties included delivering tires weighing between 50 and 100 pounds to customers, unloading tires for customers, and driving defendants' delivery truck.
3. On March 20, 2003, plaintiff made a delivery to a customer's business location. Plaintiff approached the door to the customer's business, slipped on a floor mat, and hit his head on the customer's glass door. After the fall, plaintiff was dazed and experienced numbness in his hands, as well as neck and shoulder pain.
4. Plaintiff called Joey Thompson, his supervisor, who took plaintiff to Raleigh Community Hospital. After plaintiff received an examination and underwent x-rays at Raleigh Community Hospital, the medical provider prescribed Motrin, Vicodin, and Skelaxin for plaintiff as well as home rehabilitation exercises.
5. Defendants treated this incident as a medical only claim and directed plaintiff to receive medical treatment at Raleigh's Concentra Medical Center. After an examination, physician's assistant Kevin Pilecki diagnosed plaintiff with low back strain and hypertension. Mr. Pilecki agreed with the pain medications previously prescribed and recommended that plaintiff use ice for treatment and recommended plaintiff begin physical therapy. Mr. Pilecki assigned plaintiff work restrictions of no lifting, pushing or pulling over five pounds, no use of upper arms above shoulder level, no bending forward greater than three times per hour, and no driving of a commercial vehicle.
6. During the following four weeks, plaintiff returned to Concentra at least ten times and was treated by physician's assistants and by Dr. Michael Landolf. Plaintiff continued to complain of back pain and continued to participate in physical therapy and do home rehabilitation exercises. Plaintiff was working light duty based upon his work restrictions.
7. Dr. Landolf referred plaintiff to Raleigh Orthopedics for an evaluation by Dr. Andrew Bush, who first saw plaintiff on April 28, 2003. Dr. Bush has an independent contract with Concentra. After a comprehensive examination of plaintiff's spine, Dr. Bush diagnosed plaintiff with back strain and felt plaintiff would continue to benefit from physical therapy.
8. On May 5, 2003, after plaintiff finished his course of physical therapy, Dr. Bush released plaintiff to return to work without restrictions and instructed plaintiff to return as needed. Plaintiff returned to work with defendants.
9. Plaintiff continued to experience cervical and lumbar pain and sought treatment at Concentra several times following his full release to work. Plaintiff sought treatment twenty times with Concentra for back pain and soreness after March 26, 2003.
10. On May 19, 2003, Dr. Bush ordered an MRI of plaintiff's cervical and lumbar spine. On June 2, 2003, after reviewing plaintiff's MRI, Dr. Bush concluded that plaintiff's cervical spine examination was significant for multiple level degenerative disc changes and herniations. He also determined that there was significant stenosis at the C2-3 level with a spinal cord compromise and myelopathic changes on the spinal cord itself. There were large disc extrusions at C3-4 and C5-6 with stenosis of the central canal, as well as foraminal stenoses at multiple levels. Dr. Bush noted that he felt plaintiff's fall exacerbated a pain syndrome that, in view of the discs in plaintiff's neck, was quite justified. However, Dr. Bush was unable to state that plaintiff's spinal condition overall was exacerbated by the fall.
11. Dr. Bush determined that if the discs had prolapsed at the time of the fall on March 20, 2003, plaintiff would have had a significant neurological event and catastrophic neurological symptoms, such as paralysis. Dr. Bush stated that in his opinion plaintiff's condition was chronic and more likely happened with time, rather than resulting from an acute event.
12. Dr. Bush referred plaintiff to a neurosurgeon for further treatment, which Dr. Bush said needed to be done as soon as possible. Plaintiff did not return to work for defendants after Dr. Bush informed him about the severity of his back condition. Plaintiff last worked for defendants on June 3, 2003. Plaintiff continues to experience back and neck pain on a daily basis and has difficulty sleeping. He has been unable to work since June 3, 2003, although he is still considered an employee of defendants.
13. On June 10, 2003, plaintiff sought treatment with neurosurgeon Dr. Robin F. Koeleveld. After Dr. Koeleveld's examination and evaluation of plaintiff, he determined that plaintiff had congenital cervical disc disease with herniations at C3-4, C5-6, and C6-7. Dr. Koeleveld recommended that plaintiff undergo an anterior cervical diskectomy, fusion, and stabilization at C3-4, C5-6, and C6-7 as soon as possible. Because defendants have refused payment for this surgery, plaintiff had not had surgery as of the close of the evidentiary record.
14. Dr. Koeleveld determined that plaintiff's cervical spine condition pre-existed his injury on March 20, 2003, and that his condition was aggravated by his fall. Further, Dr. Koeleveld believed that plaintiff was in significant danger of a neurological catastrophic event that could leave plaintiff as a quadriplegic and Dr. Koeleveld felt surgery should be done immediately. It was Dr. Koeleveld's opinion that the fall on March 20, 2003 gave rise to plaintiff's immediate need for surgery.
15. Dr. Koeleveld explained how plaintiff's fall exacerbated his pre-existing neck condition: "Well, I think that most likely, he must have hyperextended his neck or hyperflexed his neck, and it caused the spinal cord to shift slightly or stretch slightly over one of those [pre-existing] herniations, and it caused those symptoms, and then they were — then the spinal cord was never able to recover from that, or to heal from that, because of the ongoing pressure."
16. The Full Commission gives greater weight to the causation opinions of Dr. Koeleveld than to those of Dr. Bush and therefore finds based on the greater weight of the medical evidence that plaintiff's cervical spine condition was significantly aggravated by plaintiff's March 20, 2003 injury by accident.
17. As the result of the compensable injury by accident on March 20, 2003 plaintiff has been disabled and has been incapable of earning wages in any employment since he last worked for defendants on June 3, 2003.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 20, 2003 plaintiff sustained a compensable injury by accident in the course and scope of his employment with defendants, which aggravated a pre-existing but asymptomatic condition of his cervical spine. N.C. Gen. Stat. § 97-2(6);Ruffin v. Compass Group USA, 150 N.C. App. 480, 563 S.E.2d 633
(2002); Smith v. Champion Int'l, 134 N.C. App. 180,517 S.E.2d 164 (1999).
2. As a result of plaintiff's compensable injury by accident on March 20, 2003, plaintiff was temporarily totally disabled from any employment and is entitled to temporary total disability compensation at the rate of $432.90 per week beginning June 4, 2003 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants pay for medical treatment incurred or to be incurred that was reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability due to his compensable injury by accident. N.C. Gen. Stat. §§ 97-2(5), 97-25. The approved medical expenses include treatment, including surgery, recommended by Dr. Koeleveld.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $432.90 per week beginning June 4, 2003 and continuing until further Order of the Commission. Such amount that has accrued shall be paid in a lump sum, subject to the attorney's fee awarded below.
2. Defendants shall pay for plaintiff's medical treatment incurred or to be incurred as a result of his compensable injury by accident, including surgery recommended by Dr. Koeleveld.
3. A reasonable attorney's fee of 25% of the compensation awarded plaintiff in Paragraph 1 above is approved for plaintiff's counsel. From the accrued lump sum amounts, 25% shall be deducted and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth payment thereafter.
4. Information provided by counsel during oral arguments before the Full Commission indicated that since the close of the evidence of record, plaintiff has received short-term disability benefits paid by defendants and also that in early 2004 plaintiff earned some wages with another employer. In the event that the parties are unable to agree on these credit issues, either party may request a subsequent hearing before the Commission.
5. Defendants shall pay the cost of this action.
This the 4th day of August, 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER